CHARLES W. SELLERS, APPELLANT, v. FRANK A. MORE-
HOUSE, RESPONDENT.

Submitted October 16, 1925—Decided May 4, 1926.

**Negotiable Instruments—Promissory Note—Counter-Claim for Commissions, &c.—Plaintiff, President of a Corporation, by which Defendant was Employed—Note at First in Favor of Corporation, Later it was Made in Favor of Plaintiff Individually—If Counter-Claim Existed in Fact, Claim was Against Corporation, Not the President Individually—Numerous Transactions Involved—Release Finally Executed Included Settlement of All Transactions Except Note in Question—Verdict Against Plaintiff and in Favor of Defendant Reversed.**

On appeal from the Monmouth County Court of Common Pleas.

Before GUMMERE, CHIEF JUSTICE, and Justices KALISCH and CAMPBELL.

For the appellant, *Lester C. Leonard* (*Howard S. Higginson,* of counsel).

For the respondent, *Reilly, Quinn & Parsons.*

PER CURIAM.

The plaintiff appeals from a judgment rendered against him in the Monmouth County Court of Common Pleas, and in favor of the defendant for the sum of $994.85, with costs,

The plaintiff brought his action against the defendant upon a promissory note, which was as follows:

"NEW YORK CITY, May 21st, 1923.

One year from date I promise to pay to the order of Charles W. Sellers, five hundred twenty-eight and 38/100 [$528.38] dollars, with interest thereon at 6% from date at 34 Stone street.

Value received.                    FRANK A. MOREHOUSE."

The defendant, in his answer, denied that he owed the plaintiff "any money or sums of money upon said note," and by way of counter-claim sets forth that the plaintiff was the president of the Export Freight Forwarding Company, Inc., a body corporate, and on behalf of said company agreed with defendant to pay him fifty per cent. of the net proceeds of the warehouse department and ten per cent. of the new business secured by the defendant for the company, and that on November 1st, 1918, the defendant secured for the plaintiff a contract between the plaintiff's company and the Bayway Storage and Supply Company, for the term of five years. That on October 1st, 1920, the contract secured as aforesaid by the defendant was altered between the parties thereto, and that the sum of $2,500 was paid to the plaintiff as the consideration of such alteration (presumably by the Bayway Storage and Supply Company), in which sum the defendant had an equal undivided one-half interest. That the plaintiff refused to pay the defendant and had made no accounting to him, and that he, the defendant, had demanded from the plaintiff the sum of $1,250, less the amount of the note held by the plaintiff of $528.38, that is, the sum of $721.62.

The plaintiff, in reply to defendant's answer and counter-claim, among other things, sets up that on May 21st, 1923, the defendant executed and delivered to plaintiff a release under seal, discharging all demands then existing in favor of defendant against the plaintiff, to which, in turn, by way of answer to the reply setting up the release, the defendant asserted that the release was obtained fraudulently and upon the representation by the plaintiff that there were no further moneys due to the defendant at the time of the execution of the release, whereas, as a matter of fact, the plaintiff had then and there funds in his possession belonging to the defendant in the amount of $1,200.

It appears from the testimony that the transactions of the parties, upon which the plaintiff's action is founded, were treated, by the trial judge, as transactions between them, as individuals, and as not involving the Export Freight For-

warding Company, Inc., in its corporate capacity, though the initial contract of employment of the defendant reads as follows:

"NEW YORK, 4-1-1918.

Mr. F. A. Morehouse,
    Office.

Dear Sir: Effective April first, we will pay you 50% of the net profits of the Warehouse Department, and 10% on any business secured and controlled by you on Lighterage Export or Import, and allow you a drawing account of $35 per week. This to continue in effect until cancellation by mutual consent of both parties.

Very truly yours,

THE EXPORT FREIGHT FORWARDING CO., INC.
Per C. W. SELLERS."

It further appeared in the case that the note given to the plaintiff, individually, was a renewal of a note of $491.53, due on December 1st, 1921, payable to the order of "The Export Freight Forwarding Co., Inc.," with interest at five per cent.

The trial judge, as has already been said, regarded the controversy as between the parties, and not involving the corporation in its corporate capacity, for he says in his charge: "In ordinary circumstances, as the litigation here involved would have concerned that company, but for the fact that subsequently * * * subsequent to this letter, involving the employment of Mr. Morehouse by Mr. Sellers, he, apparently, regarded their relations as individuals, and in the ensuing transactions between them including the final adjustment of their differences, whereby Mr. Morehouse, the defendant, was asked to contribute to certain losses involved in the transactions between the parties, with the result that the original note, of which the note in suit is a renewal, was made and given to Mr. Sellers. Therefore, this case is submitted to you, gentlemen, on the theory that the controversy does involve the individuals and not the corporation, namely, the Export Freight Forwarding Company. Mr. Sel-

lers sues upon this note as an individual, and Mr. More-house defends, therefore, as against his claim."

Now, as to the pleadings. To the action upon the promissory note the defendant denied that he owed the plaintiff any money upon it. With his denial the defendant filed a counter-claim, which, upon its face, shows that the claim of the defendant, if he had any, was against the Export Freight Forwarding Company and not against the plaintiff. The plaintiff made no motion to strike out the counter-claim, and answered that he leave the defendant to make proof as to the allegations in the counter-claim, and further pleaded a release under seal, executed by the defendant to the plaintiff, Charles W. Sellers, and the Export Freight Forwarding Company. To this the defendant replied that the release was obtained fraudulently, &c.

The written contract of employment of the defendant, on April 1st, 1918, was between the Export Freight Forwarding Company, Inc., and the defendant. The contract was signed, "The Export Freight Forwarding Co., Inc., Per C. W. Sellers." The defendant was therefore made aware that C. W. Sellers was acting on behalf of his company and not in his individual capacity. The circumstance that upon an accounting had in November, 1920, between the corporation and defendant, there was found to be due from the defendant to the corporation, $491.53, for which sum the defendant gave his note to the corporation, is strong confirmatory proof that the defendant was dealing with the corporation, as such, and not with Mr. Sellers, its president, individually. The subsequent transaction, that is, the renewal of the note after it had remained unpaid for nearly two years, and then made payable to C. W. Sellers, individually, is, in our judgment, of no particular significance.

It further appears from the testimony of the defendant that the consideration of the original note of $491, made payable to the Export Freight Forwarding Company, represented fifty per cent. of the loss sustained by the company in a shipment of hides, which percentage of loss the defend-

ant, under his contract with the Export Freight Forwarding Company, was obligated to pay.

According to the defendant's testimony the amount, which he was under obligation to pay to the company, was determined by a settlement of accounts had in November, 1920, between them; that the defendant at the time was not in the employ of the company and had not been since May 1st, 1920.

The record shows that on or about the 15th day of November, 1918, a contract was entered into by and between the Bayway Storage and Supply Company, Inc., of Bayway, Elizabeth, and the Export Freight Forwarding Company, Inc., a New York state corporation, located in New York City, by the terms of which contract the Bayway company employed and designated the freight forwarding company its sole agent for securing merchandise to be stored at the former's plant located at Bayway, Elizabeth, for which the freight forwarding company was to receive from the Bayway company twenty-five per cent. of all collections on storage or other charges except labor, which commission or labor was fixed at ten per cent. It was further agreed by the Bayway company that no merchandise was to be taken, received or placed in its warehouse, premises or on storage except through and with the consent of the freight forwarding company as the Bayway company's agent during the continuance of the agreement, and that by this agreement it is meant that the freight forwarding company should be the sole agent and only person who shall have the right to solicit merchandise to be placed on storage in the Bayway company's warehouse. The contract was to remain in full force and effect until May 1st, 1923, unless canceled by mutual consent of the parties, in writing.

It is conceded that the defendant secured this contract for the freight forwarding company.

This occurred in November, 1918. On the 31st of March, 1920, the defendant sent in his resignation, and it is to be particularly observed that he writes: "I herewith tender my resignation from your firm pending outstanding contracts

and collections in which we are mutually interested," &c. The letter is. addressed to C. W. Sellers, but the contents clearly indicate that it was sent to the latter in his representative capacity, as a member of the corporation. In reply, Mr. Sellers submitted a letter written on the business stationery of the Export Freight Forwarding Company, Inc., on April 3d, 1920, and subscribed by C. W. Sellers, and addressed to the defendant, in which letter it clearly appears that Sellers, on behalf of the company, accepts the defendant's resignation, for after acknowledging the receipt of the tendered resignation Sellers refers to "on any business contracted for between now and when you leave" that the defendant will receive the same percentage of the net profits as he had been receiving, &c.; evidently, under his contract with the Export Freight Forwarding Company. The tenor of the letter leaves no doubt that it solely concerns the interest of the freight forwarding company, for at the bottom of the letter it closes with the request, "will you please sign acceptance," &c. This letter is subscribed, "C. W. Sellers, F. A. Morehouse, accepted."

From a plain reading of the testimony there is no room even for a possible doubt that the defendant had complete knowledge that he was an employe of the freight forwarding company, and that its business was being transacted through C. W. Sellers, its president. The defendant, immediately after leaving the employ of the freight forwarding company, went into the employ of the Bayway company, with whom the freight forwarding company entered into the contract procured by the defendant, and in the net profits of the latter company, derived from the storage of merchandise under its contract with the Bayway company, the defendant was to participate under the terms of his contract with the freight forwarding company. The defendant, in his testimony, makes the admission that at the time he left the freight forwarding company's employ there was nothing due him for commissions, he having been fully paid. It was not until about six months after the defendant left the freight forwarding company's employ that he was called upon to share in the loss

sustained by the freight forwarding company, which resulted in the giving of his note, as had already been fully detailed. An undisputed fact in the case is that after the defendant left the employ of the freight company and went into the employ of the Bayway company, a controversy arose between the two companies, the former company charged the latter with having violated the contract procured by the defendant, in that the Bayway company was dealing directly with the freight company's customers and had solicited business from its old customers, which conduct was in violation of the Bayway company's agreement that no merchandise shall be taken, received or placed by it in said warehouse, premises or storage except through and with the consent of the freight forwarding company as the Bayway company's agent, and that by this part of the agreement it is meant that the freight forwarding company shall be the sole and only person who shall have the right to solicit merchandise to be placed on storage in the Bayway company's warehouse. In view of this situation it was agreed that the Bayway company pay to the freight forwarding company the sum of $2,500, which was partly to reimburse it for lost commissions and partly for a cancellation of the old contract and the entering into a new one, which, in terms, deprived the freight forwarding company from being the sole agent except for the customers specifically named in paragraph three of the contract, and leaving the Bayway company free to employ other agents to solicit contracts for storage, &c., except from those mentioned in paragraph three.

There was also a reduction of the commission to be paid to the freight forwarding company from twenty-five per cent. to ten per cent. It was also stipulated that during the term of this new agreement, which term was to run from October 1st, 1920, to July 1st, 1924, the Bayway corporation would not take any storage by or through it, the defendant or Mr. Fink. On the 12th day of November, 1920, this contract was modified between the parties thereto, in that clause, nine, of the contract of October 1st, 1920, which prohibited the Bayway company from taking any storage that may be pro-

cured by or through it, the defendant or Mr. Fink was annulled. The contract expressly authorizes the Bayway corporation, the defendant or Mr. Fink, to procure merchandise to be stored in the Bayway company's warehouse during the period commencing October 1st, 1920, and terminating July 1st, 1921, a commission of ten per cent. of the amount billed after collection made by the Bayway company to the freight forwarding company. An accurate account was to be kept of all merchandise stored in the warehouse procured by the defendant, Mr. Fink or the Bayway company, &c. It was further stipulated that the contract of October 1st, 1921, shall remain unchanged and unaltered in its terms, including, especially, paragraph three.

The record further discloses that on October 25th, 1920, the Bayway company gave its check for $2,500 to settle its differences with the freight forwarding company. The check was made payable to the Bayway company's president, and endorsed by him and by C. W. Sellers. On November 9th, 1922, the defendant Morehouse, in a letter to C. W. Sellers, says: "I have been awaiting settlement of my share of $2,500, paid by the Bayway Storage and Supply Company to the Export Freight Forwarding Company, which I am informed you had in hand at the time of our *final* settlement, November 20th, and trust you are now able to settle this matter without further delay * * *."

The defendant admits that he received no answer to this letter, nevertheless, in a release executed by him on May 21st, 1923, which release stated that controversies and differences had arisen between the freight forwarding company, Charles W. Morehouse, the defendant, and Charles W. Sellers, the defendant released Charles W. Sellers and the Export Freight Forwarding Company from all claims of any nature or kind whatsoever from the beginning of the world to the date of these presents. In the same release Sellers and the Export Freight Forwarding Company released Morehouse from all claims, &c., except the claim that Sellers had against him on the note for $528.38, upon which the plaintiff's action was based in the instant case. The posture of the case,

at its close, was that it was undisputed that the contract of the defendant's employment was with the Export Freight Forwarding Company, by virture of which instrument the company obligated itself to pay to the defendant fifty per cent. of the net profits of the warehouse department. Even if we elided the release and accepted the untenable theory upon which the trial judge submitted the case to the jury, namely, that Sellers was the Export Freight Forwarding Company, or, *vice versa*, that the freight company was Sellers, there is nothing in the testimony and circumstances which reasonably permit the inference that the $2,500 paid was net profit. On the contrary, it appears indisputably that this sum was paid to the freight forwarding company partly as damages sustained by it by reason of breaches of its contract with the Bayway company, by the latter, and for a modification and alteration of the contract. If the nature of the transaction was profit, it cannot avail the defendant, since the case is utterly barren of any proof of what the *net* profit was, and if the defendant was entitled to recover at all on his counter-claim, he was limited to a recovery of *net* profit only. But there seems to be a fundamental bar to a recovery against Sellers, by the defendant upon his counter-claim. The legal obligation to pay defendant his share of the net profits rested upon the Export Freight Forwarding Company under his contract with the company. If there is any debt arising out of the contract due to the defendant he must look to the company for payment. Even if Sellers had promised to pay the defendant, it was a promise to pay the debt of another, and unless such promise is in writing it cannot be enforced by reason of the statute of frauds and perjuries. 2 *Comp. Stat.*, p. 2612, § 5. It is not pretended that Sellers undertook in writing to be answerable to the defendant for profits arising under his contract with the Export Freight Forwarding Company.

We have reached the conclusion that the refusal of the motion, on behalf of the plaintiff, for a direction of a verdict in his favor, against the defendant, was error.

Judgment is reversed, with costs.